UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

QUINTON JAMAL DANIELS,

        Petitioner,

v.

WILLIE O. SMITH,

        Respondent.
_____/

Case No. 1:18-cv-490

Honorable Janet T. Neff

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Quinton Jamal Daniels is incarcerated with the Michigan Department of Corrections at the Marquette Branch Prison (MBP) in Marquette, Michigan. Petitioner pleaded *nolo contendere* in the Wayne County Circuit Court to armed robbery, Mich. Comp. Laws § 750.529.[1] On January 31, 2017, the court sentenced Petitioner to a prison term of 7 to 20 years.

On April 27, 2018, Petitioner timely filed his habeas corpus petition which raises one ground for relief:

    I.    The trial court reversibly err[ed] in failing to allow [Petitioner] to withdraw his plea prior to sentencing, when his plea of no-contest was not knowingly, intelligently, and voluntarily made, [in] addition to [Petitioner] asserting his innocence, confusion, being under psychotropic medication and receiving [in]effective assistance of counsel.

(Pet., ECF No. 1, PageID.5.) Respondent has filed an answer to the petition (ECF No. 9) stating that the petition should be denied because it is meritless. Upon review and applying the standards

---

[1] Petitioner also entered a *nolo contendere* plea to a charge of possession of marijuana. The court sentenced Petitioner to "time served" for the possession conviction; therefore, he was not in custody for that conviction at the time he filed his petition. (J. of Sentence, ECF No. 10-6, PageID.172.)

of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that there is no merit to Petitioner's habeas challenges. Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual allegations

The state court record does not include much detail regarding the crime for which Petitioner was convicted. The trial court relied upon the investigator's description of the event to provide a factual foundation for accepting Petitioner's plea:

> On November 9th, 2016, at the location of 2926 Caniff, in the city of Hamtramck, County of Wayne, [Petitioner] went to that location and entered it. It is a store. When he entered this location, he had in his possession—he was armed with a black handgun. [Petitioner] entered that store and pointed it directly at the clerk and owner of that store. Before the clerk could say anything—or the suspect could say anything, the clerk grabbed the handgun and a struggle ensued. [Petitioner] then attempted to flee from the store. When the clerk attempted to lock the suspect out there was, through the open door, the clerk was hit in the face with the gun by [Petitioner] at which time [Petitioner] fled on foot.
>
> On November 10, 2016, the next day, police officers from Hamtramck on routine patrol observed [Petitioner] walking down the street. They stopped him and during a search incident to arrest for this armed robbery recovered from his person fifteen small baggies of marijuana—fifteen small baggies of a controlled substance, marijuana. [Petitioner] does not have a medical marijuana card and does not have the legal authority to possess that marijuana.

(Plea Hr'g Tr., ECF No. 10-3, PageID.119-120.) The robbery was captured on videotape. (*Id.*, PageID.121.) Petitioner's counsel informed the trial court that he had reviewed the tape and that it was consistent with the prosecutor's reading of the investigator's report. (Id.)

Petitioner was initially charged with armed robbery, possession of marijuana, and habitual offender-third offense. In reviewing the plea offer with the trial court, the prosecutor explained that, if Petitioner were to not enter a plea, the prosecutor would move the court to amend the information to include a felony-firearm charge. (*Id.*, PageID.121.) That would have been

Petitioner's second felony firearm. Upon conviction, Petitioner would have been subject to a mandatory five-year consecutive sentence. (*Id.*, PageID.112.)

The plea was subject to a *Cobbs* agreement.[2] Based on a preliminary evaluation of the sentencing guidelines, Petitioner's minimum would have fallen into a range of 81 to 135 months, not considering the effect of a habitual offender-third offense enhancement. (*Id.*, PageID.110-111.) The court, in its discretion would have determined Petitioner's maximum sentence; however, the maximum might have been as long as life imprisonment. (*Id.*) The trial court agreed to sentence Petitioner to a minimum of 7 and a maximum of 20 years if he entered a plea to armed robbery. (*Id.*)

With that background, the court reviewed with Petitioner the charges and potential penalties he faced. (*Id.*, PageID.113.) The court reviewed the rights Petitioner would be giving up if he entered a plea. (*Id.*, PageID.113-117.) Petitioner acknowledged that he understood the charges, the potential penalties, the *Cobbs* agreement sentence, and the rights he would be giving up if he entered a plea. (*Id.*) Petitioner chose to plead *nolo contendere* to the charge of armed robbery and the charge of possession of marijuana. (*Id.*, PageID.117-118.) Petitioner acknowledged: that he was entering the plea freely and voluntarily; that he had availed himself of counsel's advice regarding Petitioner's options and his rights; that, other than the *Cobbs* agreement of a 7 to 20-year sentence, there were no promises; and that no threats, undue pressure, or force had induced his plea. (*Id.*, PageID.118-119.)

---

[2] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court approved the practice of judicial involvement in sentence bargaining. *Id.* at 211. In *Cobbs* the supreme court authorized state trial court judges to, at the request of a party, provide a preliminary evaluation of the sentence that the judge would impose. *Id.* at 211-12. The parties may then base a plea and sentencing agreement on that number. *Id.* If the court decides to exceed that number at sentencing, the court must permit the defendant to withdraw his or her plea. *Id.*

3

Despite Petitioner's representations on the record at his plea hearing, the next time Petitioner appeared in court, he asked to withdraw his plea. (Sent. Tr. I, ECF No. 10-4, PageID.130.) He offered the court several reasons. He said his counsel rendered ineffective assistance, never visited Petitioner, never informed Petitioner of the charges, never provided a discovery packet, and promised Petitioner a one-year sentence as part of the plea deal. (*Id.*, PageID.130-131.) The court denied Petitioner's request because the plea hearing colloquy and the agreements signed by Petitioner belied his claims. (*Id.*, PageID.131-132.)

When Petitioner returned for sentencing a couple of weeks later, the investigator had finally scored Petitioner's guidelines range. The range increased from the preliminary estimate to 108 to 225 months. (Sent. Tr. II, ECF No. 10-5, PageID.140.) The *Cobbs* agreement minimum now fell below the guidelines range. (*Id.*) Though the new guidelines rendered his *Cobbs* sentence even more beneficial, Petitioner again indicated his desire to withdraw his plea. (*Id.*, PageID.141.)

Petitioner's counsel attempted to present Petitioner's ineffective assistance argument, but the court ultimately turned to Petitioner for elaboration. (*Id.*) Petitioner explained that he was concerned the guidelines had changed. (*Id.*, PageID.142.) The court advised Petitioner that his sentence would still be 7 to 20 years, even though the guidelines had changed. The court also attempted to figure out what impact a lack of discovery might have had on Petitioner's plea. In the end, the court could see no legitimate reason to permit withdrawal of the plea, so she imposed a sentence consistent with the *Cobbs* agreement.

Petitioner, with the assistance of appointed counsel, applied to the Michigan Court of Appeals for leave to appeal the judgment of conviction. He presented a scattering of reasons to support his request to withdraw the plea. He claimed he was not properly informed as to the

consequences of his no-contest plea, that he was innocent of the armed robbery charge, and that he was heavily medicated on Seroquel and Wellbutrin at the time his plea was entered. (Appl. for Leave to Appeal, ECF No. 10-6, PageID.159-160.) Petitioner argued further that he was misinformed by his counsel regarding the guidelines and his likely sentence. (*Id*., PageID.166.)

Petitioner supplied the appellate court with an affidavit to support his claims. (Affid., ECF No. 10-6, PageID.182-184.) In the affidavit, Petitioner claims he was pressured, confused, and under duress to enter the plea. (*Id*.) He believed he would not have to go to prison and that he was innocent of the charged crime. (*Id*.) Petitioner avers that his plea was just a product of heavy psychotropic medications and his bi-polar condition. (*Id*.)

By order entered September 6, 2017, the court of appeals accepted Petitioner's affidavit as part of the record, but then denied his application for leave to appeal for lack of merit. (Mich. Ct. App. Order, ECF No. 10-6, PageID.149.) Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court. The application purported to raise several issues, but it actually just restated the issue he raised in the court of appeals in several different ways. (Appl. for Leave to Appeal, ECF No. 10-7, PageID.192-200.) The supreme court denied leave by order entered March 5, 2018. (Mich. Order, ECF No. 10-7, PageID.191.)

This petition followed.

II.   AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

6

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.   Plea Validity

Petitioner's challenge, in the first instance, is presented as a claim that the trial court erred when it did not permit Petitioner to withdraw his plea. A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

Although Petitioner's claim is focused on plea withdrawal, it also clearly claims that the plea was invalid because it was involuntary or unknowing. Guilty pleas bar habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights, *see Tollett v. Henderson*, 411 U.S. 258, 267 (1973); but, among claims not barred are those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. Although Petitioner's plea was *nolo contendere* instead of guilty, the standard is the same.[3]

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.

---

[3] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted). Thus, a plea of *nolo contendere* waives a claim that the evidence of guilt is insufficient in the same way that a plea of guilty does. *See Post v. Bradshaw*, 621 F.3d 406, 426-27 (6th Cir. 2010) (stating that, "[b]y pleading no contest, Post waived any objection to the sufficiency of the evidence"); *United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982) (stating that, "[l]ike a plea of guilty, a plea of *nolo contendere* constitutes a waiver of all so-called 'non-jurisdictional defects' or, more accurately, any claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him").

In order to find a guilty (or *nolo contendere*) plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Petitioner's reference to his bipolar disorder and the medications he was taking touch upon his competence and his understanding of the charges against him. But, Petitioner provides nothing more than a simple reference to those conditions and medications.

The fact that a defendant suffers from a mental disorder or takes medication is insufficient, standing alone, to warrant inquiry into his or her competence. *See United States v. Allen*, 665 F. App'x 531, 533-34 (6th Cir. 2016). In *Allen*, the Sixth Circuit considered whether a diagnosis of bipolar disorder should prompt the court to evaluate a defendant's competency and concluded it would not. "For the district court to have had a duty to order a competency hearing, [the defendant] would have needed to exhibit behavior demonstrating that she lacked 'either a sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against [her].'" *Id.* at 534 (quoting *United States v. Maxwell*, 569 F. App'x 361, 364 (6th Cir. 2014)).[4]

---

[4] *See also Johnson v. Michigan Parole Bd.*, No. 2:11-cv-11674, 2012 WL 6853535, at *7 (E.D. Mich. Dec. 6, 2012) (court concluded that reports disclosing that petitioner was bipolar and suffered from suicidal ideation did not raise a bona fide doubt as to his competence); *Lovejoy v. McKee*, No. 07-11729, 2011 WL 2490954, at *4-5 (E.D. Mich. June 22, 2011) ("Petitioner has been treated with Prozac and Lithium for bipolar disorder . . . [; h]owever, a person is not necessarily incompetent to stand trial simply because he is receiving psychiatric care or is mentally ill. . . [T]here was no evidence of irrational behavior in this case to alert the trial court that a competency hearing was necessary."); *Smith v. Bobby*, No. 3:09CV470, 2010 WL 749938, at *21 (N.D. Ohio, Feb. 22, 2010) (where petitioner suffered from bipolar disorder and attention deficit hyperactivity disorder, the court stated: "Not every manifestation of mental illness demonstrates incompetency to stand trial. Neither low intelligence, mental deficiency, nor the fact that a defendant has been treated with anti-psychotic drugs can automatically be equated with incompetence [citations omitted]. Major depression, generalized anxiety, or borderline personality disorders do not necessarily show that a defendant is unable to consult with his or her lawyer or is incapable of understanding the proceedings against him or her."); *Hunter v. United States*, Nos. 2:06-cv-1014, 07-cv-1097, 2008 WL 53694, at *6-8 (S.D. Ohio, Jan. 2, 2008) (the fact that the defendant had been diagnosed and treated for bipolar disorder, mild schizophrenia, and post-traumatic stress disorder, "'reveal[ed] no basis on which to find that the district court should have ordered a competency hearing.'").

9

The transcripts from Petitioner's trial court proceedings do not demonstrate that Petitioner behaved irrationally nor do they demonstrate any factual misunderstanding of the proceedings. Petitioner's counsel addressed whether or not Petitioner was able to rationally consult with counsel: "[Petitioner] does have a history of bipolar disorder. I did see him last night and he seemed to be aware of his proceedings and as he did this morning." (Sent. Tr. II, ECF No. 10-5, PageID.139.) Petitioner does not provide any evidentiary support for his contention that bipolar disorder or his medications rendered him incompetent for the trial court proceedings.

The plea must also be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

Petitioner's claim that counsel promised him a one-year jail sentence suggests that Petitioner may not have understood the consequences of his plea. But, this Court cannot just accept Petitioner's recounting of that promise. Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude his present assertion that his counsel promised Petitioner a one-year sentence in exchange for a plea. In *Baker v. United*

*States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement if it consists of "secret terms known only to the parties." *Id.* at 90. Furthermore, because defendant's later claim of a secret agreement was negated by the trial record, no evidentiary hearing was required. *Id.* at 92.

The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also section 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding that a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. 975 F.2d at 1210.[5]

---

[5] Thereafter, the court in *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994), ordered an evidentiary hearing to inquire into allegations of an undisclosed plea agreement. The *Peavy* court noted that the government admitted the existence of an oral plea agreement, not reflected at the plea hearing. The court was careful to observe that the trial court had not directly asked the defendant whether there were any promises apart from the plea agreement. "Such

11

The judge asked Petitioner if there were any promises made other than the *Cobbs* agreement to sentence Petitioner to 7 to 20 years. (Plea Tr., ECF No. 10-3, PageID.118). Petitioner answered: "No." (*Id.*) He is bound by that response.

Additionally, a valid plea requires that Petitioner have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see*

---

inquiries would have prompted disclosure of the promises on which Peavy relies here, or, if Peavy had remained silent, likely would foreclose his post-conviction reliance on [those] promises." 31 F.3d at 1345.

*also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

The crux of Petitioner's ineffective assistance argument is his claim that counsel provided misinformation regarding the guidelines. The *Cobbs* agreement minimum of 84 months was based upon the preliminary guidelines estimate: 81 to 135 months. (Arraignment Tr., ECF No. 10-2, PageID.102-103; Plea Hr'g Tr., ECF No. 10-3, PageID110-111.) The estimate was not prepared by Petitioner's counsel; indeed, Petitioner's counsel thought the estimate might be high. (Arraignment Tr., ECF No. 10-2, PageID.103; Sent. Tr., ECF No. 10-5, PageID142-143.) In fact, the estimate was low. The finally calculated guidelines minimum range was 108 to 225 months. (Sent. Tr., ECF No. 10-5, PageID.140.)

Petitioner does not explain how he was prejudiced by the preliminary estimate error. It defies logic for Petitioner to say he was willing to enter a plea in exchange for a 84-month minimum when the minimum guidelines range was 81 to 135 months, but he would not enter a plea in exchange for an 84-month minimum if the minimum guidelines range was 108 to 225 months. If the *Cobbs* agreement was a good deal based upon the initial estimate of the guidelines, it became an even better deal when guidelines were finally scored. Indeed, the *Cobbs* agreement minimum was so low that the trial court was compelled to depart downward from the discretionary guideline minimum sentence range to go forward with the agreement. Petitioner has provided the Court no basis to conclude that he would have not entered the plea if counsel had told him the minimum guidelines range was 108 to 225 months.

Petitioner also indicates counsel was ineffective because counsel promised a minimum sentence of one year. Even if counsel had promised such a sentence, and thereby caused Petitioner any misperceptions regarding the range of outcomes, the trial court corrected those misperceptions at the plea hearing. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) ("[T]he state trial court's proper colloquy can be said to have cured any misunderstanding Ramos may have had about the consequences of his plea.") Petitioner's self-serving suggestion that he would not have entered his plea if he knew the sentence were more than one year is unconvincing. Where a defendant indicates on the record that he understands the specific consequences of his plea, he is "'bound by his statements[.]'" *Ramos*, 170 F.3d at 566 (quoting *Baker*, 781 F.2d at 90). To hold otherwise would "[render] the plea process meaningless . . . ." *Id.* Indeed, "the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before" the Court. *Id.* Accordingly, Petitioner has failed to show that he suffered any prejudice as a result of counsel's alleged ineffectiveness.

Finally, Petitioner attempts to invalidate his *nolo contendere* plea with a claim that he is actually innocent of the armed robbery charge. The Supreme Court has determined there is no constitutional bar to a criminal defendant's entry of a guilty (or *nolo contendere*) plea even though he protests and claims he is innocent. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). The Supreme Court has explained further that "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of innocence." *Herrera v. Collins*, 506 U.S. 390, 401 (1993). "A claim of 'actual innocence' is not itself a constitutional claim . . . ." *Id.* at 404. Such a claim is, at most, "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* Thus, a claim of actual innocence might warrant overlooking an abuse of the writ, *Sawyer v. Whitley*, 505 U.S. 333 (1992), a procedural default, *Murray v. Carrier*, 477 U.S. 478, 496 (1986), or even a lack of timeliness, *McQuiggin v. Perkins*, 569 U.S. 383 (2013); but, standing alone, it is not a cognizable ground for habeas relief.

Moreover, the threshold for establishing actual innocence—as a gateway or otherwise—would be "extraordinarily high." *Herrera*, 506 U.S. at 417; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007). Petitioner's showing falls far short. He just baldly claims he is innocent. (Affid., ECF No. 10-6, PageID.183-184.) "[S]uch a self-serving affidavit must be reviewed with great skepticism." *Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012); *see also McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) ("[Petitioner's] affidavit and testimony that he was not [there] at the time of the murder adds little in the way to his actual-innocence claim.").

Under these circumstances, despite Petitioner's many attempts to challenge the validity of his plea, the state courts' determinations that the plea is valid, and the courts' rejection of Petitioner's claim of innocence, are neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:   March 20, 2019                    /s/ Ellen S. Carmody
                                           Ellen S. Carmody
                                           United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).